Good morning, Your Honors. Greg Hurley, attorney for the City of Riverside, appellant. Plaintiff has sued the City asking for an injunction that all of the City's existing pedestrian routes and the public rights-of-way, which we can also call sidewalks, that were built before the Americans with Disabilities Act took effect, that those sidewalks be brought into compliance with the new stringent federal standards immediately. Plaintiff also seeks damages in that lawsuit and this lawsuit for thousands of those sidewalks built before 1992 across the City that are not in compliance with the new federal standards under the ADA. The City owns more than 1,000 miles of sidewalks within the public right-of-way. Most of that sidewalk was built before the new ADA regulations for accessibility took effect. Is there a timeline by which the City has to come into compliance? It depends on what you mean by coming into compliance, Your Honor. Under the regulations, which we contend in this brief do not have a private right of action associated with them, the barriers that the City identified that are necessary to be removed to provide access to the City's programs are supposed to be removed within two years. Two years of when? Two years of the passage, the effective date of the ADA. Which was when? 1992. So in 1994 they should have been in compliance. Again, depending on what you mean by in compliance, the transition plan was supposed to identify physical barriers that are necessary to be removed for program access and then within two years those barriers were supposed to have been removed by City, so by 1994, correct? So if he has a private right of action, he's got a legitimate right? Again, depending on the details of what program access are, what barriers are there, if he has a private right of action, then yes, he would have a cause of action. It would have been done in 94, here we are in 2000, whenever it was this suit was brought and it hasn't been done. Well, no, the City has removed barriers. The City spends in excess of $10 million a year separate and apart from its alterations in new construction. Why was the City so slow at the gate of bringing up this argument about whether there's a private right of action? I mean, that is, you know, he went through a whole trial and didn't bring that up. I think we did, Your Honor. From the inception of this trial all the way through, we contended that what the plaintiff wanted exceeded what the ADA required in a variety of forms. All right, but that's not the same as if you say you can't bring a, you don't have a right to even be in court. I mean, that, you know, there's an argument that's a jurisdictional issue, that you don't have any standing to bring that particular lawsuit, and the City didn't get to that until much later in the game. Why didn't the City waive that? Well, remember, Your Honor, that the plaintiff is suing under a number of different theories here. This is one phase of the case. There are other theories the plaintiff is suing under where it's clear he does have standing. For example, the post-1992 work. Well, but I mean, but generally when you have all of those things together, you know, the way that, you know, lawyers approach that, you knock out what you knock out, and then you leave in place what should appropriately go to trial. And if this is a jurisdictional issue, which you're asking the court to address at this point, why didn't that come up then? We were not able to knock it out. We did raise it. We contended that the plaintiff did not have standing. We contended that the relief the plaintiff wanted could not be granted, that it exceeded what the ADA allowed, that it exceeded what the regulations allowed, that this plaintiff didn't have. Did you specifically argue that he didn't, that there was no private right of action under Section 35.150D? I believe we did. I believe that we argued that the plaintiff could not raise that claim and that that claim exceeded what the ADA allowed. I didn't think you raised it until after you lost. I believe we raised it throughout the litigation, Your Honor. I want to make sure this is very important, because you're kind of giving a vague answer to a specific question. Okay. She's asking you specifically, Judge Callahan is asking you specifically, did you raise the defense that there is no private right of action under this regulation? Now, you're answering, well, he didn't have standing, he didn't have a claim, you know. She's asking you specifically, did you raise this as you're couching it now? The only reason I'm being vague, Your Honor, is I don't know the exact language. Okay. Well, I don't know is a better answer than just kind of guessing at it. I believe we did, without knowing the exact language. Remember the exact language we used in the brief, Your Honor. I think it was on March 30, 2006, that you moved for a new trial arguing for the first time that Section 35150 is not privately enforceable. So I'd like to know where before that in the record you can find that for me. I'm sorry, Your Honor. I can tell you generally because it was raised throughout every issue of the case. Did you file a reply brief on this? All right. And Mr. Longberg raised that in his brief, right? Yes, Your Honor. Wouldn't it have been helpful to file a reply brief and tell us exactly where all of those things? I mean, it's squarely here. Again, Your Honor, I believed it was very obvious in the record. I apologize. Well, if you've got two judges asking you and possibly a third on the phone, maybe it isn't so obvious. And when someone raises that, that's exactly why you file a reply brief. Or if you didn't file a reply brief, that's exactly why you'd be prepared to say, it's here, here, here, and there in the record. I understand, Your Honor. But I would like to the – Because we might want to slam you with a waiver, and I don't think you want that. No, Your Honor. But, Your Honor, I did want to return to the significance of this case. It seems to me I don't add much to this by arguing the circuit split that you're obviously aware of. There's two cases that have found that there is no private right of action. There's one case, the original case, found that there was a private right of action. It really comes down to which side this Court wants to follow. But what I would like to add for this Court right now that may help is the significance of this issue. Well, it does come down to that. But you have an additional issue in terms of, did you waive it? Is it jurisdictional? Do we address it? All of that. So it's not – I think what you're saying is, yes, exactly. If we get to that point, it does come down to, do we follow the Sixth? Do we follow the Tenth? Do we follow the First? Which of the circuits do we follow? But things have to be on a plate in front of you so that you can address them. And so that's not the only issue here. Whether we address it is an important issue. Understood, Your Honor. But, again, I wanted to try to put forth the significance of this issue. You know, cities like Riverside have thousands of miles of sidewalks. The transition plan is – And the State has no money. Exactly, Your Honor. They can't even pay tax refunds. And one of the cases we've cited the Court to more recently in a letter is the ruling in CDR v. Caltrans, which is a class action against Caltrans. Against all of Caltrans' sidewalks statewide, more than 10,000 miles of sidewalk are at issue. The class has been certified. And what the district court there found was that there was no private right of action to enforce the self-evaluation transition plan. It's cases like that and the significance of this issue that led to the amicus brief that was filed in this case by the California Association of Counties and the League of Cities. And we appreciate the Court accepting that brief and allowing it. Well, okay, but on the other hand, let's just say you could file that. It's a terrible burden. But on the other hand, you know, you have that kind of pesky little ADA statute that you've got to deal with, and you've got 13-150 subsection D. So if Congress clearly meant for it to be a private right of action, then I don't care how much money it costs you or anything like that, you're out of luck, right? Understood. The equity wouldn't matter if Congress meant it to be that. But I don't think Congress did. We have two circuit courts that have found that Congress did not. Well, why should we follow those and not the 10th? Because I think Congress did not indicate that they wanted a private right of action. The Department of Justice hasn't even indicated they want a private right of action. The Department of Justice is not shy about intervening in cases where it sees its regulations are being misconstrued. In fact, in another ADA case, also brought by Mr. Longberg, an appeal heard before this Court, the Department of Justice came forward and actually took over the appeal and filed briefs. That was Longberg v. STK. So if the DOJ thought that this Court might misconstrue its regulations, if the DOJ really believed that there was a private right of action here to enforce a self-evaluation transition plan, I have to believe that they would be here today. Or they'd be in one of these other actions. And to the best of my knowledge, the DOJ hasn't appeared anywhere at no time has the DOJ ever said there is a private right of action to enforce our regulation. And I think that's significant. Do you want to reserve some time? I would, Your Honor. Thank you. Thank you very much. Good morning. Good morning, Your Honors. My name is Terry Kilpatrick. I'm the attorney for John Longberg, the plaintiff and appellee who is here in the courtroom today. Your Honors, I'd like to address three points today. One is the waiver issue. The second is whether Mr. Longberg has a private right of action. And the third is why the First and Sixth Circuits got that same question wrong when they addressed it. Turning quickly to the waiver issue, I'll address it only briefly. This is not a standing issue. The city admitted subject matter jurisdiction in its answer to the complaint. It did not raise this issue as a defense in its complaint. It did not raise this issue at all. Pre-trial, it raised it for the first time. After trial, this is a motion to dismiss for failure to state a claim. Well, let me ask you this. Obviously, in terms of that, I mean, I think experienced advocates know that we certainly read the briefs, but we don't limit, you know, we don't limit our research to what the advocates tell us. So we look otherwise. Assuming that you're correct that it would appear that at the motion for new trial, the date that I listed in 2006, that it came up at that point. It looks to me like the cases that the Sixth Circuit, the Tenth Circuit, the First Circuit, and also I think the Sandoval case is relevant to this. It looks like those cases weren't squarely available. Either they occurred after or I think maybe, I mean, Sandoval might have been decided right when the trial was in progress or something along those lines. So the law wasn't as developed as it is right now if a person were to have the trial today. So if that law wasn't available and this is a jurisdictional issue, should we, you know, why shouldn't we hear the issue? Well, the law was a clarification. I don't really think it was a new pronouncement of law necessarily. And I don't think it matters. Somebody raised that issue for the first time and it appeared to be, I don't know if it was the Sandoval case or not. I don't know if there were cases before addressing this failure to state a claim, but that's what it was. It wasn't a jurisdictional issue. This isn't an Article III standing case. And, again, there's another issue that has not been raised in this brief or anywhere else. Mr. Lombard has the right to be in the courthouse doors. There's a controversy over federal law. There's a remedy for him. And if you want to kick him out of the courthouse doors, you don't do that for each cause of action. You kick him out altogether. So this is a motion. Well, I don't think that can be entirely true. I mean, I think that he could have, you know, he could have a right to bring, you know, some of the things that he was seeking remedies under, but whether there's a private, but I think whether there's a private right of action under the regulation is a different situation. Well, Your Honor, I just disagree that that's an Article III issue. I don't think that Article III is addressed to every separate cause of action. Your Honor, let me turn to the other issue, which is does Mr. Lombard have a private right of action? Now, every court that has addressed this, the Sandoval case, the Ability Center case, the Chatham case, the Iverson case, they all agree on one thing. What is Congress's intent? Well, let's do that. Let's turn to the statutes and find out what Congress intended. We don't have a specific proclamation that Congress intends us to be a private right of action, right? I mean, those words, are those words anywhere? No, Your Honor. Okay, give me that, and then go why. Let's start with Section 12132 of 42 of the United States Code. That's the basic anti-discrimination clause. I'm paraphrasing, but it's public entities shall not discriminate against the disabled in providing program services activities. The next section, 12133, is the, let's call it the implied private right of action. It says everything you get under the Rehabilitation Act, everything you get under the Civil Rights Act, that will be your remedies for the ADA. Those statutes have been recognized to provide a private right of action. We go to the next statute, 12134, and it says two things. One, Attorney General, promulgate regulations that implement this part. And that phrase, this part, is a reference to Part A of Title II, which is Sections 12131 through 12134. The second thing that that statute says is, Attorney General, when you do those regulations, we want you to do one just like you did in Part 39 of Title 28 of CFR. You go to Part 39 of Title 28, Section 39150D, lo and behold, it is a very detailed transition plan requirement. So when Congress is saying implement a regulation, they were talking about the transition plan. They knew what a transition plan was, and they told the Department of Justice to implement a regulation requiring public entities to prepare a transition plan. Let me ask you this because, I mean, it's fairly complicated. And, I mean, obviously we do have a split. We have a split in the circuit already. But you're advocating that we should take the Tenth Circuit's approach, correct? Yes. And the Tenth Circuit has a rather general approach in concluding that all of the disputed, all that was disputed in that case, the regulations were privately enforceable because they simply provided the details necessary to implement the statutory right created by, essentially, the ADA. Now, I'm trying to sort of look at it, you know, if you had Venn diagrams or whatever, that they should all be, you know, that they should be intersect. What about... I wonder if we've lost Josh. Okay, I'll wait for a second. Maybe stop the clock too. Hello. Josh, are you back with us? Yes, I am. Okay, you just missed some really good stuff. Okay. Back to you, mister. Okay, well, so we know where the Tenth Circuit's coming from. And then Title II mandates that public entities not deny disabled persons their services and seeks to remedy the denial of such services by mandating access. Now, the existence or non-existence of a plan, I'm going to put this proposition and I want you to tell me what's wrong because it sort of deals with the Sixth and the First, does not by itself deny a disabled person access. As the Sixth and the First Circuits pointed out, a public entity may be able to comply with the ADA without ever drafting a transition plan. In that case, a lawsuit forcing the public entity to draft a plan would afford the plaintiff no meaningful remedy. Conversely, a public entity may have a flawlessly written plan but still be in violation of the ADA. So I'm finding areas that don't possibly... I think the Sixth and the First Circuit are saying not everything intersects like what the Tenth Circuit said. With all due respect to those courts, they got it wrong. And here's why. For two reasons. You cannot comply with Title II and not have a transition plan. Section 12134, subdivision B says we want a regulation that requires public entities to prepare transition plans. That's the statutory intent. It couldn't be clearer. So regardless if your city's accessible or not, we want you to prepare that transition plan to assure yourselves and the disabled that that's true. So that's just not true as a matter of statutory law. But the second issue sort of gets to the effect of a transition plan. Remember that discrimination includes deliberate indifference. This court has so ruled most recently in this case, Kitsap v. County of Duval. Deliberate indifference means do you know there's a likelihood of a violation of a federal right and by failing to act you're going to violate that federal right. Section 12134 says these regulations, the requirements to prepare a transition plan, implements this part, meaning the anti-discrimination part. So like in Sandoval, one, we have to presume that that regulation is valid. In fact, that it does implement this part. Well, but let me ask you this. It seems to me that Mr. Longberg sought no remedy other than a declaration that the city was not in compliance with the regulation. Assume that it had 1335.150, subsection D, been the true vehicle to right the wrongs caused by the city's ADA violations, wouldn't Mr. Longberg have asked for some actual relief in connection with the regulation? He did. He asked for a permanent injunction and he received a permanent injunction ordering the city to prepare a transition plan. That's what's on appeal. That was the injunction was issued and that's. But if they're supposed to be completely doing the same thing, that they're supposed to make access available, shouldn't he have been asking for what was wrong, shouldn't they be one and the same there, as opposed to just, he just asked for compliance with the regulation. He just asked for, that they weren't in compliance with the regulation, that they didn't have a transition plan. He didn't say what was wrong. Well, it's not, I'm not sure I understand your question, but it's not Mr. Longberg's burden to prove what was wrong, right? That's the whole point of the transition plan. Congress clearly evidenced its intent in the findings and in the House report. The problem with public entities is there are barriers. There are existing barriers. We know this. This is why we're implementing Title II. And what's the remedy to prevent that discrimination from happening? To go do a transition plan. City, go and look. They're not saying, disabled people, you need to go out yourself and prove that the city is inaccessible. That's not the burden. In fact, that's what we're doing in the rest of this trial. The burden's been put on Mr. Longberg to prove that the city is inaccessible. I don't believe that's what Congress intended, but that's what we're being forced to do. Well, he has other ways to get relief on that other than to have a private cause of action under the statute, right? I don't know. Well, didn't he? What were the other things that you brought in this lawsuit? Well, we brought two things. One is that everything built after the ADA was passed wasn't built in compliance. We won that case. They fixed those curb ramps. The rest of the case is, I think what you're addressing is, is the city accessible and viewed in its entirety? So we're going to go out and put on evidence of all these surveys, of thousands of places around the city that are inaccessible to wheelchairs, curbs, inaccessible curbs, raised pavement, that you just cannot get a wheelchair down the street. So we're going to put on that evidence. Yeah, there may be another remedy, but does that preclude his private right of action to get the city to do what Congress told public entities to do? Public entities, we want you to go and look. We don't want you to sit back and wait for the disabled people to bring these cases to you. The one case, the only case that I was aware of before we filed this case, was the Schoenfeld case versus City of Carlsbad. That plaintiff went out, I think he had a half a dozen barriers, and the court just said, I don't think that's enough. I don't think that's enough to prove the city's inaccessible and viewed in its entirety. So what do we have to do? I mean, I know what I'm doing. I'm putting on evidence of thousands of barriers. Now, it's cost a lot of money, a lot of time to do this, and that's what Congress was trying to resolve when they issued that transition plan regulation. These courts were coming up with this hypothetical. What if there was a fully accessible city but no transition plan? That's not the hypothetical Congress was envisioning. In fact, I've never seen a case like that. I've never seen a public entity like that. What's in the findings of the ADA? What's in the House report in the legislative history of the ADA is for years we've been discriminating against disabled, not deliberately, but deliberate indifference. There are barriers that you just haven't looked for. These are the kind of things we need you to go and look for them, and we need you to remove them to make your public entities accessible to the disabled. If I understand correctly, the only relief you're asking with respect to the transition plan is the injunction that you got. You don't get damages for failure to have a transition plan. I don't know, but we're not asking for that. Okay. Gotcha. The other thing that these courts did that they got it wrong was they said, well, if we require the transition plan be prepared, we're going to have to incorporate all of the Department of Rehabilitation Act regulations, even if those aren't enforceable under the Rehabilitation Act. Well, again, that's just wrong. 12134 didn't say incorporate the Rehab Act regulations. It said, Attorney General, go promulgate new regulations. That's what we're doing. We're enforcing the ADA regulations, and those ADA regulations and the statute both require that a transition plan be prepared. Has the transition plan been prepared? No. You'll get some disagreement from the city. The city came in at the trial introducing some evidence of missing curbs and some other problems. But Judge Timlin addressed those, saying this isn't enough. This last-minute information isn't enough. You haven't told me what you're going to do to make the city accessible, how you're going to fund this, what you're doing every year pending compliance. This has been going on really a long time. It's been going on a long time. I mean, the ADA was passed more than 17 years ago. Mr. Lomberg has been in a wheelchair for 30 years. This lawsuit was filed. Well, I was trying to look at it from the standpoint. I mean, some of it seems that the attorneys were extending out, but this has been going on a very long time. I'm not this attorney, Your Honor. I mean, I have done everything. We have filed motions to expedite. I filed probably a dozen motions and notices to expedite the case. I filed three different notices with the chief judge of the central district to move the case along. I have done everything I can. The judge has bifurcated and trifurcated this case over my objections. So it's painful, but it's been happening. And it's time for it to stop. I mean, it really is. What all these, what MECAS are trying to do is to prevent public entities from doing what Congress intended them to do. Thank you very much, Mr. Capuccio. Thank you. Mr. Hurley, back to you. Thank you, Your Honor. I want to give you some perspective on this. What we're talking about here, the plaintiffs brought this lawsuit raising numerous claims, damages, noncompliance of new construction, policy issues. The self-evaluation transition plan, which just happened to be Phase I, was just one of many, many claims that they raised. But let's talk about the relief that they're asking for for the city's thousands of miles of sidewalks built prior to 1992. What they want the city to do is to bring all of those sidewalks into compliance with the new stringent requirements of the new federal standards. For example, the new standards require that for a sidewalk that is 36 inches wide, about this wide, that the variance, the cross slope across that sidewalk, cannot be more than three-quarters of an inch. So plaintiffs are asking under the transition plan that the city, within two years, make more than a thousand miles of sidewalks compliant with that standard as well as many, many other standards. Are you required to do that? I don't think so, Your Honor. Well, then you win the lawsuit. But do we? I mean, what if the judge says it's not? It's got nothing to do with whether he has a private right of action or not. The core issue really isn't the work as much as what Mr. Capuccio said. I don't understand the relevance of what you've just told us is what I'm saying. If he has the right to sue you, he has the right to sue you. Now, whether he's going to win, you know, that's the way it will come out. I didn't connect the dots well enough for you. What Mr. Kilpatrick referenced for you was the obligation for a survey, which he believes and argues is part of the transition plan. So it's not just doing the work of that sidewalk, the thousands of miles of sidewalk. It's surveying all of that thousand miles of sidewalk to see whether or not a barrier exists. So the question of whether or not we have to do it is independent. But he's clearly advocating, and I think the transition plan, if there's a private right of action, could conceivably be required. Clearly, retired Judge Timlin thought it was required that the city, all cities, all states survey every single sidewalk constructed before 1992 for compliance with standards like that. Now, do the regs require that you do a transition plan? The regs do require that you do a transition plan if you have physical barriers to program access. If he can't compel you to do it, how does one get the city to do it? The Department of Justice, which has not been shy about suing cities, about approaching cities, about bringing them in. It doesn't make you feel very good. Cities just have a lot of excuses why they're not going to get things done, and it's not going to get better because there's no money as far as that goes. And so it doesn't settle the heart to see how long this has been going on and nothing's been gotten done. Well, I have to respond to that, Your Honor. The city of Riverside spends in excess of $10 million a year independent of new construction and alterations. And when they do a new construction or when they alter a sidewalk, they bring it into compliance with the most stringent current standards. But independent of that, just to remove accessibility barriers, purely to remove accessibility barriers, they spend in excess of $10 million a year. They have committed to have all of the barriers removed from their sidewalks by 2030. So for more than 1,000 miles of sidewalk that predate that. Well, if they're – okay, but if they're still – if they're not – if Mr. Longberg can still prove that, you know, he doesn't have access, he still has a cause of action against the city regardless, right? Yes. And, again, he has – and he's pursuing those causes. And the fact that it costs you a lot of money and it would take a really long time, that wouldn't be a defense to that, would it? It depends on what – there is an undue hardship defense. But you're hitting now on the numerous other claims that are brought under this umbrella lawsuit for policy issues, specific locations. This was just one of many, many different claims that happened to come first in this case. And, again, on the issue of whether we raise the defense of whether the plaintiff has standing to assert this, that's our very first argument in our trial brief, is that the plaintiff does not have standing to raise this question. Well, but that's – okay. But that's different. I think what he's arguing is whether he – whether there's a private right of action, they raised that in their – you haven't said anything about that to the court in your briefing, so why haven't you waived it? I guess, Your Honor, it was just – it seems so obvious to me, and I apologize, obviously, I was wrong in this, that that was raised throughout this litigation. Also, the obvious point that these cases we're referring to, Iverson, Chapin, and Sandisky, were all decided after the court's opinion. Remember, we had a lull of five years between when the court issued this decision and when we finished trial and when the court issued its decision. So there was that long period there. But those cases didn't – weren't decided, so I can't very well cite a case before it's – But they were decided one night. You know, I just don't know why it wasn't in the briefing at all this time either. That's either – that's just fact. We've got less than a minute left if you want to wrap up. Your Honor, I would like to wrap up, and the point I'd like to raise is the – refer this court to its opinion in a case called Midget v. Tri-County, which was an ADA case that involved a public agency's bus service. It was a Title II case like this. And in that case, this court quoted from the U.S. Supreme Court's Rizzo case. And what this court said is that when a plaintiff seeks to enjoin a governmental agency, his case must contend with the well-established rule that the government has traditionally been granted the widest latitude in the dispatch of its own internal affairs. And it went on to say, a Federal court must exercise restraint when a plaintiff seeks to enjoin a State government. I think in this context where we're looking at how we should construe a regulation that doesn't indicate whether or not there's a private right of action and a statute that doesn't say there's a private right of action, that that deference should go through and include how we look at that statute and the deference that we should give a governmental entity. Thank you, gentlemen. The case to start is submitted. Good morning. 0672584 Wu v. Mukasey. Each side has 15 minutes.
judges: Hall, Silverman, Callahan